**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

MARIA LOUISE ZINGALE,                  )     CASE NO. 1:20-cv-02197
                                       )
    Plaintiff,                         )
                                       )
        v.                        )     JUDGE DAVID A. RUIZ
                                       )
KILOLO KIJAKAZI,                       )
    *Acting Comm'r of Soc. Sec.*,       )     **MEMORANDUM OPINION AND ORDER**
                                       )
    Defendant.                         )

       Plaintiff, Maria Louise Zingale (Plaintiff), challenges the final decision of Defendant

Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying her

application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 416(i), 423 *et seq*. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I. Procedural History**

       On February 28, 2018, Plaintiff filed her application for DIB, alleging a disability onset

date of April 24, 2015. (R. 12, Transcript (Tr.) 158-160). The application was denied initially

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a
party." Fed.R.Civ.P. 25(d).

and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 98-119). Plaintiff participated in the hearing on July 24, 2019, was represented by counsel, and testified. (Tr. 39-69). A vocational expert (VE) also participated and testified. *Id*. On October 3, 2019, the ALJ found Plaintiff not disabled. (Tr. 10-19). On July 27, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). Plaintiff's complaint challenges the Commissioner's final decision, and the parties have completed briefing in this case. (R. 1, 14, 15, 16).

Plaintiff asserts the following assignments of error: (1) the ALJ failed to properly evaluate the evidence by designating Plaintiff's vocal cord paralysis and anxiety as non-severe, and by failing to consider the cumulative effects of cirrhosis and autoimmune hepatitis; (2) the ALJ erred in failing to find Plaintiff fully credible; and (3) the residual functional capacity was not supported by substantial evidence. (R. 14).

## II. Evidence

### A. Relevant Medical Evidence[2]

#### 1. Treatment Records

On April 10, 2015, shortly before the alleged onset date, Plaintiff saw Kevin Leisinger, M.D., for follow-up of anxiety, depression, and hypothyroidism (Tr. 262-63). Plaintiff had stopped all of her medications several months earlier. (Tr. 262). She wanted to get "back on track" and several medications were restarted including Xanax for anxiety, Bupropion for

---

[2] The recitation of the evidence is not intended to be exhaustive. It includes those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

depression, and Synthroid for hypothyroidism. (Tr. 262-63). Plaintiff's physical examination was unremarkable. (Tr. 263).

On May 28, 2015, Plaintiff complained to Dr. Leisinger of an intermittent sore-throat for more than three weeks. (Tr. 260-61). Dr. Leisinger noted that Plaintiff had a past medical history of thyroid cancer, was status post partial thyroidectomy, and had been in remission with stable lab results. (Tr. 260). He recommended an ear, nose, and throat (ENT) specialist for a laryngoscopy. *Id*. Dr. Leisinger described Plaintiff's anxiety as "[c]ontrolled," and physical exam was unremarkable. (Tr. 260-61).

On April 4, 2017, Plaintiff reported taking Xanax only a few times per week, noting it helped her wind down at night. (Tr. 249). She denied a depressed mood, and had no tolerance issues with medication. *Id*. On examination, Plaintiff's abdomen was soft, nontender; she was pleasant and cooperative with a bright affect. (Tr. 250).

On June 20, 2017, Plaintiff was seen by Anthony Post, M.D., for complaints of leg swelling. (Tr. 508). Dr. Post noted he last saw Plaintiff six years earlier in 2011. *Id*. He noted a "history of [primary biliary cholangitis] PBC autoimmune hepatitis overlap and a 2006 biopsy showing Stage I fibrosis. *Id*. On physical exam, Plaintiff had some temporal wasting; a supple neck without adenopathy or thyroidomegally; a soft, non-tender abdomen; 1+ peripheral edema; no ascites; and an appropriate mood. (Tr. 510). Dr. Post indicated that Plaintiff did not require any assistance with sitting, standing, or walking. (Tr. 508). Dr. Post's impression was that Plaintiff had elevated liver tests, and was taking Ursodiol intermittently though it was prescribed three times daily. (Tr. 511-12). He stated that "[e]dema now probably dietary but also represents likely progression of disease." (Tr. 512).

On August 3, 2017, Petitioner underwent an upper GI endoscopy upon Dr. Post's referral.

(Tr. 461). The impression was non-bleeding grade I esophageal varices and normal gastrojejunum anastomosis. (Tr. 462).

On September 8, 2017, Plaintiff saw a speech pathologist regarding management of dysphonia. Plaintiff reported being frustrated by inconsistent vocal quality and vocal fatigue. (Tr. 240). The record notes, "Perceptual voice quality is moderately, rough, breathy and strained with intermittent vocal fry. Videostroboscopy today shows improvement in the position of her right arytenoid compared to her 2010 videostroboscopy. Closure is still incomplete with phase asymmetry Dr. Bryson recommended a possible vocal fold injection, patient will consider this and/or possible voice **therapy** prior to considering right vocal fold medialization." (Tr. 240) (emphasis in original). Pitch, intonation, volume, resonance, articulation, fluency, and rate were all measured to be within normal limits. (Tr. 240-41). The assessment noted Plaintiff had "[r]ight vocal cord paralysis with hoarseness; somewhat mild at rest in office but has long standing vocal fatigue, glottic insufficiency, and poor projection." (Tr. 242). The plan was either voice therapy or injection. *Id*.

On September 29, 2017, Plaintiff was "doing better" with her "weight stable" and "edema down." (Tr. 503). Dr. Post indicated that Plaintiff did not require any assistance with sitting, standing, or walking. *Id*. On review of symptoms, Plaintiff was not feeling tired, and reported no difficulty walking. (Tr. 504). On physical exam, Plaintiff had a supple neck; a soft, non-tender abdomen; no ascites; and "minimal peripheral edema" in the extremities. (Tr. 505). Dr. Post's impression included the following: "[e]dema resolved no ascites," and "[s]ome fatigue. Needs to exercise more." (Tr. 507). He believed Plaintiff was "doing well." *Id*.

On October 5, 2017, Plaintiff received right vocal fold injection medialization via microdirect laryngoscopy resulting in complete glottic closure. (Tr. 237). She had a preoperative

4

and postoperative diagnosis of right vocal cord paralysis. *Id*.

On October 3, 2017, Dr. Leisinger noted that Plaintiff was being treated by Dr. Post for chronic liver disease, had postsurgical hypothyroidism following a thyroidectomy for thyroid cancer, and had some hoarseness of voice for which she was seeing an ENT and was considering vocal cord injections. (Tr. 239). With respect to the conditions for which Dr. Leisinger treated Plaintiff, he noted Plaintiff was doing "fairly well overall" with her anxiety, requiring only a single dose at bedtime and not really taking it during the day. *Id*. Plaintiff had stopped Wellbutrin, noticing no difference being off of the medication. Id. Plaintiff was content with taking Xanax as needed. *Id*.

On January 4, 2018, Dr. Leisinger noted that Plaintiff was taking Xanax once daily, and twice daily on rare occasions if her anxiety is more severe; she denied any recent panic attacks and her symptoms were overall well-controlled without side effects. (Tr. 235). Plaintiff reported feeling fatigued much of the time, and occasional abdominal pain. *Id*. Her most recent thyroid stimulating hormone (TSH) testing from October of 2017 revealed therapeutic levels. *Id*.

On January 11, 2018, an image study of Plaintiff's liver revealed "[t]he liver is coarse in echotexture and nodular in contour consistent with cirrhosis. No focal lesion." (Tr. 468). The impression was cirrhotic liver with no focal mass. *Id*.

Though not a treatment document or medical record, on March 20, 2018, Plaintiff completed a Function Report. (Tr. 190-97). She reported extreme fatigue, issues with concentration, swelling of all extremities when standing or walking, and muscle cramping in her hands and feet. (Tr. 190). Notably absent is any mention of difficulty speaking or communicating. *Id*. She indicated she had no problems with personal care, but also indicated everything took more time due to fatigue. (Tr. 191). She performed light cleaning and laundry

for one to two hours per day. (Tr. 192). She prepared meals three times per week. *Id*. She could go grocery and clothes shopping. (Tr. 193). She had no problems getting along with family, friends, neighbors, or authority figures. (Tr. 194-95). Her only allusion to anxiety was her statement that she does not handle stress well. (Tr. 196).

On March 21, 2018, Plaintiff saw Dr. Post for a routine follow-up. (Tr. 499). Dr. Post again indicated that Plaintiff did not require any assistance with sitting, standing, or walking. *Id*. On physical exam, Plaintiff had a supple neck without adenopathy or thyroidomegally; a soft, non-tender abdomen; extremities without peripheral edema; no ascites; and an appropriate mood. (Tr. 501). Dr. Post noted Plaintiff had mildly elevated bilirubin. *Id*.

On April 3, 2018, Plaintiff was seen by Dr. Leisinger for follow-up on "anxiety and some increasing depression." (Tr. 635). Plaintiff was "[a]nxious about the prospect of needing a liver transplant eventually." *Id*. Dr. Leisinger noted Plaintiff's "labs are overall stable with a slightly elevated bilirubin," and that Plaintiff reported some fatigue. *Id*. Plaintiff reported increased anxiety but was still taking only one Xanax most days. *Id*. "She does feel some depression returning with the recent news about her health. She is interested in going on an antidepressant again." *Id*. She was started on Celexa. (Tr. 636).

On July 13, 2018, Plaintiff saw Dr. Leisinger for an anxiety follow-up. (Tr. 649). Plaintiff reported recently feeling more anxious after he aunt died from liver disease. *Id*. She did not need Xanax every day and needed it no more than twice daily; she had no side effects on medication. *Id*. She did report one panic attack occurring the previous day. *Id*. She reported her liver-related lab work has been stable. *Id*. On exam, she was pleasant and cooperative. (Tr. 650).

On September 12, 2018, Plaintiff was seen by Dr. Post for a follow up of her cirrhosis. (Tr. 601). She reported feeling tired, no recent weight gain/loss, no lymphadenopathy, and no

extremity edema. *Id*. On physical examination, Plaintiff had "no scleral icterus no jaundice," her "neck [was] supple without adenopathy or thyroidomegally," "no hepatosplenomegaly, no ascites[,]" "[m]ild tenderness right upper quadr[a]nt. no rebound or g[ua]rding. Extremities without peripheral edema. Mood appropriate. Neuro exam grossly non-focal." (Tr. 602).

On November 7, 2018, Plaintiff was seen by Dr. Leisinger and reported Xanax was "working well" without side effects. (Tr. 654). Review of symptoms and physical examination were unremarkable. (Tr. 654-55).

On January 3, 2019, Plaintiff went to the hospital after slipping on a marble floor while preparing to go dancing at a New Year's Eve party. (Tr. 664). On examination, she had "good flexion and extension, good range of motion, reflexes are 2+ and symmetric, motor and sensory appear to be normal, + muscular tenderness to R sided thoracic back muscle, bilateral posterior paraspinal neck." (Tr. 665). She had a normal gait, normal and symmetric reflexes, and sensation was grossly intact. *Id*.

On February 7, 2019, Plaintiff saw Dr. Leisinger for follow-up on anxiety and mood. She had "good control" of her anxiety with one pill per day, with no tolerance issues, and no side effects; her last TSH testing revealed therapeutic levels, and Plaintiff was compliant with her Synthroid medication. (Tr. 674). Plaintiff's medications for anxiety and hypothyroidism were continued unchanged. (Tr. 675).

On March 5, 2019, Dr. Post saw Plaintiff for a follow up visit. (Tr. 632). She had some abdominal cramping possibly due to adhesions from a previous surgery. *Id*. Her liver tests were "much better," and she reported occasional itching and some muscle cramps. *Id*. On physical examination, Plaintiff had no ascites, "mild tenderness at RUQ under drain sight," and no peripheral edema of the extremities. (Tr. 633-34). The doctor's plan was to increase Aldactone, a

medication used to treat high-blood pressure, to keep her extremities warm, and to exercise more. (Tr. 634).

On May 7, 2019, just one month prior to authoring a medical source statement assessing severely debilitating limitations set forth in detail below, Dr. Leisinger saw Plaintiff for a follow-up on hypothyroidism, anxiety, and complaints of a mild, dry cough and dry mouth. (Tr. 680). Plaintiff's anxiety was "fairly good with Xanax dosing." *Id*. She had no palpitations, leg edema, abdominal pain, or jaundice. (Tr. 680). On physical exam, Plaintiff's neck was supple, "no adenopathy; no thyromegaly," her abdomen was normal, and there was no edema in the extremities. (Tr. 681). Plaintiff's blood pressure was good, and she was looking to exercise more after gaining weight over the winter. (Tr. 680).

## 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On March 25, 2018, Dr. Post completed a form at the request of the State Agency. (Tr. 495). He indicated Plaintiff's diagnoses were cirrhosis and PBC with symptoms of ascites, edema, and muscle wasting. (Tr. 496). He stated that Plaintiff was under consideration for a liver transplant. *Id*. The form instructed "[i]f the impairment is physical in nature, please be specific in regarding the ability to sit, stand, walk, bend, stoop, lift, grasp, etc." (Tr. 497). Dr. Post, however, responded Plaintiff "can't do physical work [secondary] to chronic end stage liver disease." *Id*.

On April 10, 2018, State Agency psychologist Lisa Foulk, Psy.D., evaluated Plaintiff's mental impairments and limitations, finding Plaintiff had no limitations understanding, remembering, or applying information; mild limitation in her ability to interact with others; mild limitations in concentration, persistence, and pace; and mild limitation in adaptation or managing oneself. (Tr. 75-76). She classified Plaintiff's depression, anxiety, and obsessive-compulsive

disorders as non-severe. (Tr. 75). Dr. Foulk explained that claimant denied depressed mood or suicidal ideation in April of 2017, and was doing fairly well on Xanax as noted in October of 2017. (Tr. 76). In January of 2018, Plaintiff denied recent panic attacks and had well-controlled symptoms. Dr. Foulk explained Plaintiff "can shop, can pay bills, can make quick meals, can do housework. She drives, visits with friends and family. Reports she gets along with authorities. Psych is not severe." (Tr. 76).

On May 24, 2018, Dr. Post completed a second form with similar responses, which included an illegible one-word answer to question asking him to describe Plaintiff's limitations. (Tr. 593).

On June 11, 2018, State Agency physician Rebecca R. Neiger, M.D., evaluated Plaintiff's physical impairments and completed an RFC assessment. (Tr. 78-79). Dr. Neiger opined Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit and stand/walk for six hours each in an 8-hour workday; never climb ladders/ropes/scaffolds; occasionally climb ramps/stairs; and frequently balance, stoop, crouch, and crawl with no manipulative, visual, communicative or environmental limitations. (Tr. 78-79). Dr. Neiger opined that Dr. Post's March 25, 2018 was "without substantial support from the medical source who made it …." (Tr. 80).

On August 14, 2018, State Agency psychologist Irma Johnston, Psy.D., affirmed Dr. Foulk's findings noting that "all additional MER has been evaluated and found to be mostly consistent with the initial findings, which are supported by the totality of the evidence that is on file." (Tr. 91).

On September 18, 2018, State Agency physician Anne Prosperi, D.O., affirmed Dr. Neiger's conclusions noting improved liver testing, no ascites, and no edema in August and September of 2018. (Tr. 93-94).

On June 18, 2019, Dr. Leisinger completed a "Physical Medical Source Statement" indicating he had seen Plaintiff quarterly over a period of ten years. (Tr. 694-97). Plaintiff's diagnoses were autoimmune hepatitis, biliary cirrhosis, and thyroid cancer. (Tr. 694). Plaintiff's symptoms included fatigue, diffuse itching, peripheral edema, pain, abdominal swelling from ascites, low energy, muscle cramping, and voice changes from nerve damage. *Id*. Dr. Leisinger identified clinical findings and objective signs by pointing to CT scans conforming the above diagnoses, thyroid ultrasounds, liver bloodwork abnormalities, and liver biopsy. *Id*. Plaintiff's treatment included long-term thyroid medication, diuretics, anti-depressant and anti-anxiety medication, and medication for bile acid issues; and the doctor noted these could cause nausea and dizziness side effects. *Id*. Dr. Leisinger concluded that Plaintiff could only sit for about four hours in thirty- minute increments and stand/walk for about two hours during a typical workday. (Tr. 695). He opined Plaintiff needed to elevate her legs to waste level for thirty percent of the workday due to swelling and pain, and required a ten-minute break every hour due to muscle weakness, chronic fatigue, and "pain/parasthesias, numbness." (Tr. 695-96). Dr. Leisinger also asserted that Plaintiff was severely limited in her ability to finger, grasp, and reach. (Tr. 696). In addition, Plaintiff could rarely lift ten pounds and never lift any greater weight. *Id*. He opined Plaintiff would be off-task 25 percent or more of the workday, was incapable of even low stress work due to exacerbation of pain and fatigue, and would have four or more workplace absences per month but offered no explanation for the latter assessment. (Tr. 696-97).

**B. Relevant Hearing Testimony**

At the July 24, 2019 hearing, Plaintiff testified as follows:

- She was 55 years old and lived with her husband, obtained a GED, and last worked in 2016 for Sam's Club. (Tr. 44). She had a hard time with speaking, and reported her "vocal cord is broken." (Tr. 52).

10

- Previously, she worked for an importer/exporter preparing documentation. (Tr. 46, 49). She started having panic attacks at work and was taken to the hospital several times. (Tr. 49). She was asked not to come back. (Tr. 50).

- Her voice will "crack and go in and out" because she is nervous. If she speaks for "a really long time it gets more like a whisper." She had "a procedure," which she stated did not help. (Tr. 55). When family comes to visit, after four hours passes nobody can hear her and she stops talking. *Id.* She did not think she could work at a job where she had to speak continuously for a third of the day. (Tr. 56).

- Her liver disorders were discovered in 2008 after she had gastric bypass surgery. (Tr. 57). Her fatigue started around 2010, which she thought was attributable to depression and anxiety. (Tr. 57).

- She experiences incredible itchiness on her hands and feet, as well as swelling in her legs, ankles, and feet. (Tr. 58). Standing/walking triggers swelling, as does warmer weather. (Tr. 59). Elevating her feet above her heart for a couple of hours per day helps alleviate the swelling. (Tr. 59-60).

- She takes Celexa and Xanax. (Tr. 60).

- She sleeps poorly, despite being exhausted, due to itching and cramps. (Tr. 61-62).

- She can concentrate enough to sit down and read a book if it is quiet, but too much activity around her will "send [her] off the deep end …." (Tr. 62). She has difficulty concentrating when she is anxious. *Id.*

- Dr. Leisinger is a family doctor, who prescribed Celexa and Xanax. (Tr. 63).

- She was no longer on the liver transplant list because "things got better" and her "liver enzymes dropped back down." (Tr. 64). Dr. Post's physician's assistant told her that she was "not sick enough to get a new liver." (Tr. 65).

The VE testified that Plaintiff past work at the import/export job was as a foreign clerk, Dictionary of Occupational Titles (DOT) 214.467-010, with an SVP of five and is sedentary in exertion. (Tr. 66).

The ALJ posed the following hypothetical question to the VE:

> [A]ssume a hypothetical person the Claimant's age, education and work experience. This individual is limited to light work as defined by the regulations

and no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs; frequent balancing, kneeling, crouching and crawling.

(Tr. 67). The VE testified that such an individual could perform Plaintiff's past work as a foreign clerk. *Id*.

For a second hypothetical, the ALJ asked the VE to assume an individual who, due to a combination of impairments, would be off task at least 20 percent of the workday and miss or be unable to complete two or more workdays per month. (Tr. 67). The VE testified that both those limitations would be work preclusive. *Id*. In response to a question from Plaintiff's counsel, the VE testified that the need to elevate one's legs to waist level for a third of the workday would be work-preclusive even at the sedentary exertional level. *Id*. In response to a second question from Plaintiff's counsel, the VE testified that an individual who was only able to talk to co-workers or customers for a third of the workday would not be able to perform the job of a foreign clerk. (Tr. 68). The VE also testified that the foreign clerk job required the ability to "handle and finger" frequently.

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage

process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6ᵗʰ Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2.    The claimant has not engaged in substantial gainful activity since April 24, 2015, the alleged onset date ( 20 C.F.R. § 404.1571 *et seq.*).

3.    The claimant has the following severe impairments: cirrhotic liver; autoimmune hepatitis; hypothyroidism; and primary biliary cholangitis. (20 C.F.R. § 404.1520(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium light work as defined in 20 CFR 404.1567(b) except: no climbing ladders, ropes, or scaffolds; occasional climbing ramps and stairs; and frequent balancing, kneeling, crouching and crawling.

6.     The claimant is capable of performing past relevant work as a foreign clerk (Dictionary of Occupational Titles (DOT) # 214.467-010), which is sedentary, skilled work with a Specific Vocational Preparation (SVP) of five. The work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from April 24, 2015, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 12, 14-15, 18-19).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

14

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

The Court addresses Plaintiff's assignments of error out of order for purposes of clarity.

**1. Credibility Assessment**

In the second assignment of error, Plaintiff asserts the ALJ's credibility evaluation of Plaintiff's hearing testimony and Function Report violated Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 at *10 (Oct. 25, 2017). (R. 14 at PageID# 772-775). Plaintiff, however, does not develop any meaningful argument or identify how the ALJ allegedly failed to comport with SSR 16-3p. Instead, Plaintiff cites her own subjective testimony without identifying any medical evidence supporting her limitations. (R. 14, PageID# 773-774). Notably, although she complained about extreme fatigue, asserted she cannot speak for even a third of a day, a need to elevate legs, and alleged disabling levels of pain, Plaintiff's argument cites no medical records supporting these allegations. *Id*. She further argues that the ALJ utilized boilerplate language, and "never offered any reasons for discounting the testimony of Plaintiff." *Id*. She concludes by making an allegation that the ALJ cherry-picked the evidence. (R. 14, PageID# 775).

A Plaintiff does not demonstrate a violation of SSR 16-3p simply by reiterating the same subjective symptoms she believes should have been credited by the ALJ, as an ALJ is not

required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). The Sixth Circuit has stated, for example, "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) ("[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded.") (citations omitted). Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation").

"In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p. Rather, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*. A reviewing court should not disturb an ALJ's credibility determination "absent [a] compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016)

(*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

According to SSR 16-3p, evaluating an individual's alleged symptoms entails a two-step process that involves first deciding whether a claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms…."[3] 2017 WL 5180304 at *2-3. The ALJ's decision found the first step was satisfied and stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 16).

After step one is satisfied, an ALJ—when considering the intensity, persistence, and limiting effects of an individual's symptoms—should consider the following seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p at *4-8. The ALJ

---

[3] "The Sixth Circuit characterized SSR 16-3p … as merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between SSR 16-3p and the previous SSR, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court applies the current SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical.

concluded that "the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 16).

Looking at the decision as a whole, the ALJ plainly rejected the alleged need for raising legs due to swelling. The ALJ noted Plaintiff had normal gait and extremity strength. (Tr. 17). More significantly, while acknowledging a handful of treatment notes documenting mild edema (swelling), the vast majority of the treatment notes revealed no edema on physical examination. (Tr. 17, 18). In addressing Plaintiff's reported pain and fatigue, the ALJ acknowledge physical limitations and, therefore, assessed a limitation to light exertional work only. (Tr. 18). The ALJ also expressly considered two of the relevant factors when discussing Plaintiff's daily activities and conservative treatment. (Tr. 17). With respect Plaintiff's allegation that she cannot speak for even a third of a workday, the ALJ plainly considered that impairment, but found it non-severe. (Tr. 13). As discussed in greater detail, *infra*, in connection with Plaintiff's first assignment of error, the ALJ noted that "[t]here is no evidence of additional treatment for vocal fold paralysis" after Plaintiff received right vocal fold injection in October of 2017. *Id*. Thus, the ALJ clearly discussed how the lack of any further treatment factored against crediting such a limitation.

The Court cannot find the ALJ's credibility analysis was deficient under the circumstances presented herein, when considering the aforementioned high level of deference owed to an ALJ's findings with respect to the evaluation of a claimant's alleged symptoms and resulting limitations. The ALJ engaged in a sufficient credibility analysis, and was not required to analyze all seven factors, but only those factors germane to the alleged symptoms. *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005) (Baughman, M.J.) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough

assessment to assure a reviewing court that he or she considered all relevant evidence"); *see also Wolfe v. Colvin*, No. 4:15-CV-01819, 2016 WL 2736179, at \*10 (N.D. Ohio May 11, 2016) (Vecchiarelli, M.J.); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at \*9 (N.D. Ohio Apr. 4, 2012) (White, M.J.); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005) (finding that neither SSR 96-7p nor the regulations "require the ALJ to analyze and elaborate on each of the seven factors when making a credibility determination"). SSR 16-3p itself states that where "there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor," but rather will only "discuss the factors pertinent to the evidence of record." *Id*. at \*8. When "remand would be an idle and useless formality[,]" courts are not required to "convert judicial review of agency action into a ping-pong game." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6, 89 S. Ct. 1426, 22 L. Ed. 2d 709 (1969)) (further citation omitted); *accord Mischka v. Colvin*, No. 1:13-cv-1881, 2015 WL 778869, 2015 U.S. Dist. LEXIS 22054, at \*14 (N.D. Ohio Feb. 24, 2015) (Lioi, J.). Therefore, Plaintiff's second assignment of error is without merit.

### 2. Step Two Findings

Plaintiff's first assignment of error asserts that the ALJ erred by failing to find vocal cord paralysis and anxiety were severe impairments. (R. 14, PageID# 763-772). To the extent Plaintiff asserts an error at Step Two, Plaintiff fails to identify a basis for remand.

At Step Two of the sequential analysis, claimant has the burden of proving he or she has a severe medically determinable impairment, in order to establish disability within the meaning of the Act. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(ii)); *Jent v. Secretary, HHS*, 919 F.2d 140, 1990 WL 183907, at \*1 (6th Cir. 1990) (TABLE, text in WESTLAW) (citing *Higgs v. Secretary, HHS*, 880 F.2d 860, 862-863

(6th Cir. 1988)); *Gist v. Secretary, HHS*, 736 F.2d 352, 357 (6th Cir. 1984)). A "severe" impairment, according to Social Security regulations, is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Nevertheless, "[a]t step two 'significant' is liberally construed in favor of the claimant[, but] [t]he regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 428 (6th Cir. 2007); *see also* 20 C.F.R. § 416.920a(d)(1) ("If [the Commissioner] rate[s] the degree of limitation as 'none' or 'mild', [the Commissioner] will generally conclude that [the] impairment is not severe…"). The Sixth Circuit Court of Appeals has construed Step Two's severity requirement as a "de minimus hurdle." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007).

While the ALJ declined to designate Plaintiff's anxiety and vocal cord issues as "severe" (Tr. 13), his alleged failure to do so does not necessarily signify error. Because an ALJ must move on to the subsequent steps in the sequential evaluation even if only one impairment is designated as "severe," an ALJ is not required to analyze the remainder of a claimant's impairments to determine whether they too are severe. *See, e.g., Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008) ("The fact that some of [claimant's] impairments were not deemed to be severe at step two is … legally irrelevant") (*citing Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that the failure to find that an impairment severe was harmless error where other impairments were deemed severe); *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x 574, 577 (6th Cir. 2009) (same); *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. App'x 516, 522 (6th Cir. 2008)).

Once the ALJ makes a finding of severity as to even one impairment, the ALJ "must

consider limitations and restrictions imposed by *all of an individual's impairments, even those that are not 'severe.'*" SSR 96–8p, 1996 WL 374184 at *5 (July 2, 1996) (emphasis added). Thus, an ALJ's decision not to designate an impairment as "severe" at step two does "not constitute reversible error," so long as the ALJ considers all of a claimant's limitations caused by both severe and non-severe impairments at the remaining steps of the sequential evaluation. *Maziarz*, 837 F.2d at 244; *see also Nejat*, 359 Fed. App'x at 576-577.

Although Plaintiff is correct that the ALJ did not designate her anxiety and vocal issues as a "severe" impairments, the ALJ found multiple severe impairments, continued with the sequential evaluation, and expressly noted that he was considering the impact of all of Plaintiff's impairments—"including those that are not severe"—when arriving at the residual functional capacity (RFC).[4] (Tr. 13).

The ALJ was not obligated to accept Plaintiff's hearing testimony and statements in the Function Report concerning vocal issues or anxiety; and as discussed above, the ALJ did not, in fact, do so. Thus, Plaintiff's brief, by citing her own hearing testimony and statements contained in her Function Report, does not identify any basis for remand. The ALJ explained rather thoroughly why Plaintiff's vocal issues and anxiety were non-severe. The decision provides:

> At the hearing, the claimant testified that she experiences vocal fatigue after talking for a limited amount of time and shortness of breath if she walks too quickly (Hearing Testimony). The claimant testified that she would have trouble working at a job where she had to speak for one third of the day. However, there were no significant objective medical findings in the record to support more than minimal limitations on the claimant's ability to perform work activities arising from these impairments. Specifically, the medical evidence establishes the claimant has a history of right vocal fold paralysis, which developed after she underwent partial thyroidectomy to remove a malignant neoplasm of the thyroid

---

[4] The RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. § 404.1545(a). The ALJ bears the responsibility for assessing a claimant's RFC, based on the relevant evidence. *See* 20 C.F.R. § 404.1546(c).

gland in November 2008 (1F/10, 16).

After the surgery, the claimant had intermittent soreness of the throat and some difficulty swallowing liquids and solids (1F/10; 3F/16). She reported having symptoms of vocal fatigue and difficulty projecting her voice (1F/6). The claimant underwent a right vocal fold injection in October 2017 (2F/5). There is no evidence of additional treatment for vocal fold paralysis. Moreover, the undersigned notes there were no difficulties hearing or understanding the claimant's testimony during the hearing (Hearing Testimony).[5] Since her symptoms did not significantly limit her ability to perform work related activities, the undersigned finds that these impairments are not severe (20 CFR 404.1521; SSR 96-3p). The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

The claimant testified to having anxiety as well as depression issues (Hearing Testimony). However, the undersigned notes that although the record indicates the claimant has been diagnosed with anxiety and depression, and prescribed Xanax and Celexa, there is no evidence that she has ever engaged in mental health treatment (1F/18; 3F/46-47; 12F/2, 21). Moreover, progress notes establish that the claimant has good control of her anxiety and depression with prescribed medications (12F/40). The State psychological consultants also found that the claimant's mental impairments were not severe with no more than mild limitations in mental functioning (1A/7; 3A/8). Accordingly, the claimant's medically determinable mental impairments of anxiety and depression, considered singly and in combination, do not cause more than minimal limitation on the claimant's ability to perform basic mental work activities and are therefore non-severe.

(Tr. 13).

The ALJ's discussion concerning Plaintiff's allegation that she could not speak for even one-third of the workday makes clear that the ALJ found it significant that there was no evidence of additional treatment for vocal fold paralysis after she underwent a right vocal fold injection in October 2017. (Tr. 13). Plaintiff does not point to any treatment records related to speech issues, post-dating the injection, that would undermine the reasonableness of the ALJ's conclusion.

---

[5] Contrary to Plaintiff's arguments, the ALJ did not impermissibly rely solely on his observations at the hearing, as that was only an additional factor *after* the decision discussed the lack of any ongoing treatment for the condition.

22

Plaintiff simply cites record that indicate the presence of vocal cord paralysis and dysphonia on "Problem Lists" maintained within hospital records. (R. 14, PageID# 765). Notably, none of the records cited by Plaintiff document actual *treatment* for these conditions after October of 2017. Further, the State Agency physicians reviewed the evidence, more than six months after Plaintiff received vocal cord injection in October of 2017, and neither assessed any communicative limitations. (Tr. 79, 94). The ALJ expressly found these State Agency opinions to be persuasive. (Tr. 18).

Turning to Plaintiff's mental impairments, the ALJ's finding—that they imposed no significant limitations—is consistent with and supported by the State Agency psychological consultative opinions which the ALJ, at least implicitly, found persuasive. As set forth above, State Agency psychologist Dr. Foulk, on April 10, 2018, assessed Plaintiff's anxiety and depression as non-severe, finding no more than mild limitations in the "B" criteria. (Tr. 75-76). The assessment was affirmed by psychologist Dr. Johnston on August 14, 2018. (Tr. 91).

Pursuant to the regulations, "[i]f we rate the degrees of your [mental] limitation as 'none' or **'mild,' we will generally conclude that your impairment(s) is not severe**, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities[.]" 20 C.F.R. § 404.1520a(d)(1) (effective March 27, 2017) (emphasis added). The same regulation states that "*[i]f* we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity." 20 C.F.R. § 404.1520a(d)(3) (emphasis added). The reasonable inference is that an ALJ may reasonably determine that non-severe mental limitations do not impact the RFC.

It is true that where a claimant has more than one impairment, an ALJ should "consider all of your medically determinable impairments of which we are aware, including your medically

23

determinable impairments that are not 'severe' …." 20 C.F.R. § 404.1545(a)(2). Courts in this circuit, however, have routinely rejected arguments similar to those now advanced by Plaintiff. *See, e.g., Caudill v. Comm'r of Soc. Sec.*, No. 2:16-cv-818, 2017 WL 3587217 at *6 (S.D. Ohio Aug. 21, 2017) (agreeing with the Commissioner and finding that "[c]ontrary to Plaintiff's apparent contention, the ALJ's determination that she had some mild impairment does not require inclusion of mental limitations into the RFC.") (*citing Little v. Comm'r of Soc. Sec.*, No. 2:14-cv-532, 2015 WL 5000253 at *14 (S.D. Ohio Aug. 24, 2015) ("In finding that Plaintiff's social functioning limitation are mild [sic], the ALJ determined that findings of more severe limitations in this domain by others … were not credible. Thus, the ALJ permissibly declined to include social functioning limitations in the RFC."); *Walker v. Astrue*, No. 3:11-cv-142, 2012 WL 3187862 at *4-5 (S.D. Ohio Aug. 3, 2012) (finding that substantial evidence supported the ALJ's determination that the claimant's mental impairments were mild enough not to warrant specific RFC limitations)); *accord McDowell v. Comm'r of Soc. Sec. Admin.*, No. 1:20-CV-00297-SL, 2021 WL 1911459, at *9 (N.D. Ohio Apr. 19, 2021) (Henderson, M.J.), *report and recommendation adopted*, 2021 WL 1909789 (N.D. Ohio May 12, 2021) ("That the ALJ found Claimant had mild limitations in regards to the functional areas does not mandate inclusion of limitations in the RFC."); *Taylor v. Berryhill*, No. 17-11444, 2018 WL 3887521 at * (E.D. Mich. July 5, 2018) ("Indeed, courts in this district have found that mild limitations [in the paragraph B criteria] do not require incorporation into an RFC assessment.") (internal quotations omitted). In fact, the Sixth Circuit has held that sometimes even those impairments that are deemed "severe" at Step Two do not always have to be included in the RFC. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (rejecting "the proposition that all impairments deemed 'severe' in step two must be included in the [ALJ's] hypothetical.").

To the extent Plaintiff is asking the court to reweigh the evidence *de novo* and conclude that either mental health related limitations or speech related limitations were warranted, such an invitation exceeds the scope of this Court's review. A court, in this context, can only review whether the ALJ's decision was supported by substantial evidence. The Sixth Circuit has explained,

> [The plaintiff] additionally argues that the ALJ's RFC determination was not supported by substantial evidence. "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). Substantial evidence in this context "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). This standard means that "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). In reviewing the ALJ's decision, we 'may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Finally, [the plaintiff] bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

*O'Brien v. Comm'r of Soc. Sec.*, 819 Fed. App'x 409, 416 (6th Cir. 2020). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 Fed. App'x 663, 670 (6th Cir. 2009) (citations omitted).

Even if it were the Court's role to reassess the evidence, this Court finds no fault with the ALJ's conclusion that "progress notes establish that the claimant has good control of her anxiety and depression with prescribed medications." (Tr. 13) The Court's own recitation of the medical evidence, set forth above, largely corroborates the ALJ's conclusion. Plaintiff's briefs do not point to any treatment records related to speech *after* the aforementioned injection that would undermine the reasonableness of the ALJ's conclusion.

In addition, Plaintiff includes another argument to her first assignment of error, wherein she asserts the ALJ erred by finding the opinions from treating physicians Drs. Post and Leisinger "unpersuasive." (R. 14, PageID# 768-772). As stated above, Plaintiff filed her application for DIB on February 28, 2018. (Tr. 158-60). Therefore, the former "treating physician rule" no longer applies, as it was eliminated by a change in social security regulations applicable to all claims filed after March 27, 2017.[6] Nevertheless, Plaintiff asserts the ALJ failed to properly apply the new regulations, 20 C.F.R. § 404.1520c, in weighing the opinions of Drs. Post and Leisinger. (R. 14, PageID# 768-772).

The new regulations are not devoid of any requirements regarding an ALJ's duty to explain the weight assigned to the various medical opinions of record. An ALJ is required to articulate how he or she considered the factors of "supportability" and "consistency," which are the two "most important factors" in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b) & (c). The ALJ, in this case, considered the opinions from Dr. Post and Dr. Leisinger, and found as follows:

> In March 2018, Dr. Post opined that the claimant cannot do physical work secondary to chronic end stage liver disease (6F/5). This opinion is not

---

[6] Indeed, the regulations no longer use the term "treating source," instead utilizing the phrase "your medical source(s)." 20 C.F.R. § 404.1520c(a). The change is not merely semantic, as the regulation explicitly states that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from your medical sources." *Id*. "Prior administrative findings" refers to the findings of the State Agency physicians or psychologists. 20 C.F.R. § 404.1513(a)(5). As explained by the SSA, "[c]ourts reviewing claims under [the old] rules … focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision…. [T]hese courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential standard to us." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). In sum, the medical opinions from medical sources and prior administrative medical findings are both evaluated using the same factors, with no deference given to either.

persuasive, as it is vague and does not provide for any specific workplace limitations or abilities.

\*\*\*

In June 2019, Dr. Kevin Leisinger opined that the claimant could sit for about four hours and stand/walk for about two hours total in an eight-hour working day (13F/2). He opined the claimant needs unscheduled breaks once per hour and should elevate her legs to waist level for thirty percent of an eight-hour working day (13F/2). Dr. Leisinger assessed the claimant could rarely lift and carry ten pounds and could use her hands for 10 percent of the day (13F/3). Dr. Leisinger concluded the claimant would likely be "off task" for twenty-five percent or more of a typical workday and would miss more than four days per month (13F/4).

This opinion is not persuasive, as it is not consistent with or supported by the record as a whole. In fact, the extreme limitations that Dr. Leisinger assessed are not even supported by his own progress notes, which consistently document normal findings on physical examination (1F/5; 3F/8, 17, 23, 29, 37, 47, 54; 12F/2, 11, 16, 21, 31, 41, 47).

(Tr. 18).

With respect to Dr. Post, his opinion provides little more than a conclusion that Plaintiff cannot do physical work. (Tr. 497). As the ALJ determined, it is indeed vague and does not provide for any *specific* workplace limitations or abilities. The court finds no reversible error with respect to the ALJ's discussion or consideration. The pertinent regulations provide that the ALJ is not required to offer "any analysis" when it comes to issues reserved to the Commissioner, such as whether a person is disabled or not able to work. For example,

(c) Evidence that is inherently neither valuable nor persuasive. Paragraphs (c)(1) through (c)(3) apply in claims filed (see § 404.614) on or after March 27, 2017. Because the evidence listed in paragraphs (c)(1) through (c)(3) of this section is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, *we will not provide any analysis about how we considered such evidence* in our determination or decision, even under § 404.1520c:

(1) Decisions by other governmental agencies and nongovernmental entities. See § 404.1504.

*** 

> (3) **Statements on issues reserved to the Commissioner**. The statements listed in paragraphs (c)(3)(i) through (c)(3)(viii) of this section would direct our determination or decision that you are or are not disabled or blind within the meaning of the Act, but we are responsible for making the determination or decision about whether you are disabled or blind:
>
>> i) Statements that you **are or are not disabled, blind, able to work**, or able to perform regular or continuing work;

20 C.F.R. §§ 404.1520b(c) & 416.920b(c) (effective March 27, 2017) (emphasis added).

In the case at bar, Dr. Post did not opine as to how much weight Plaintiff could lift/carry, or how long she could sit, stand or walk, in an 8-hour workday. Rather, Dr. Post simply concludes that Plaintiff cannot do any physical work. Pursuant to the above cited regulation, the Commissioner need "not provide any analysis about how we considered such evidence. " 20 C.F.R. §§ 404.1520b(c). Thus, the Court finds the ALJ's decision adequately considered Dr. Post's opinion.

Turning to Dr. Leisinger, the ALJ determined that his opinion was "not consistent with or supported by the record as a whole." (Tr. 18). The ALJ further explained that limitations assessed by Dr. Leisinger were not supported by his own treatment notes, which by and large document normal physical findings. *Id*. Here, the ALJ may have combined the supportability and consistency factors in his analysis.[7]

---

[7] It is not entirely clear from the regulations whether a medical opinion provider's own treatment records impact the supportability factor, the consistency factor, or both. While a reasonable interpretation may suggest consistency is the relevant factor when discussing a medical opinion provider's own treatment records, the regulations discuss consistency in terms of evidence from *other* medical sources—not the *same* source. 20 C.F.R. § 404.1520c. On the other hand, the regulations state that "supportability," considers the "*objective medical evidence and supporting explanations presented by a medical source* are to support his or her medical opinion(s) or prior administrative medical finding(s) …." *Id*.

Supportability is defined as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1). Dr. Leisinger offers little in the way of a *supporting explanation* in her opinion for the various limitations assessed beyond a brief description of Plaintiff's symptoms. (Tr. 694-96). Nevertheless, the ALJ's decision does not expressly discuss the supporting explanation presented by Dr. Leisinger *in* the medical opinion itself as much as the lack of support for the limitations compared to Dr. Leisinger's own treatment notes. Indeed, the recitation provided above setting forth pertinent portions of Dr. Leisinger's treatment notes confirms the ALJ's conclusion that Dr. Leisinger's relatively benign physical (and mental) examinations are at odds with the severe limitations assessed.

When explaining what is meant by "consistency," the pertinent regulations explicitly instruct an ALJ to consider "evidence from *other* medical sources and nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(c)(2) & 416.920c(c)(2) (emphasis added). The ALJ found the opinions of State Agency consultants Dr. Neiger and Dr. Prosperi "persuasive, as they are consistent with and supported by the record as a whole."[8] (Tr. 18). The regulations state that

---

[8]  There is ample case law concluding that State Agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17,

29

evidence[9] from *other* medical sources, in this case State Agency physicians, is also pertinent in the consideration of whether Dr. Leisinger's opinion was consistent. Thus, the decision as a whole sufficiently explains why Dr. Leisinger's opinions were found to be lacking in consistency.

Plaintiff does take issue with the ALJ's reliance on the State Agency opinions. (R. 14, PageID# 771). Plaintiff contends the State Agency physicians did not have the benefit of records produced after September of 2018. *Id.* Notably, Plaintiff does not offer any discussion or analysis regarding how the more recent evidence documented any significant changes in Plaintiff's condition that would have rendered the State Agency consultants' opinions so unquestionably obsolete that the ALJ could not rely upon them. Plaintiff cites no authority for the proposition that an ALJ is barred from relying on State Agency physicians' opinions simply because some evidence is submitted after they rendered their opinions. "There is no regulation or case law that requires the ALJ to reject an opinion simply because medical evidence is produced after the opinion is formed. Indeed, the regulations provide only that an ALJ should give more weight to an opinion that is consistent with the record as a whole." *Williamson v. Comm'r of Soc. Sec.*, No. 1:11cv828, 2013 WL 121813 at *6 (S.D. Ohio Jan. 9, 2013), *report and recommendation*

---

2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *see also Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work."). Thus, an RFC determination that is based upon the medical opinions of State Agency consultants is generally supported by substantial evidence.

[9] Medical evidence—for claims filed after March 27, 2017—includes both "objective medical evidence" as well as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3) & 416.913(a)(3).

*adopted*, 2013 WL 1090303 (S.D. Ohio Mar. 15, 2013). While the court is aware of the decision in *Blakeley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407-409 (6th Cir. 2009), which held that an ALJ erred by failing to adequately explain the reasons for rejecting the opinions of three separate treating sources under the old rules in favor of earlier State Agency opinions, the Sixth Circuit has noted that plaintiffs have often "misconstrue[d] the Court's holding in *Blakeley v. Commissioner of Social Security* as providing a blanket prohibition on an ALJ's adoption of a non-examining source opinion, where that source has not reviewed the entire record." *Kepke v. Comm'r of Soc. Sec.*, 636 Fed. App'x 625, 632 (6th Cir. 2016).

To the extent Plaintiff requests this Court override the ALJ's reliance on the State Agency medical opinions—who found Plaintiff was capable of a limited range of light work—and find the ALJ erred by not ascribing greater weight to Dr. Post's or Dr. Leisinger's opinions, the Court declines to do so. This Court's role in considering a social security disability appeal does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017).

The Court finds the ALJ sufficiently complied with the regulations that instructs ALJs how to consider and articulate the persuasiveness of medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017. Therefore, Plaintiff's first assignment of error is without merit.

### 3. Finding Regarding Past Relevant Work

In the final assignment of error, Plaintiff takes issue with the ALJ's finding at Step Four,

but fails to develop a cohesive argument and raises several undeveloped arguments.

First, Plaintiff appears to take issue with the VE's testimony that Plaintiff's past relevant work was that of a foreign clerk per the DOT, though she herself believes she should have been considered a document specialist. (R. 14, PageID# 775). Plaintiff's lay opinion regarding how her past work should have been classified does not set forth a basis for a remand.

Plaintiff's brief proceeds to cite POMS 25005.015,[10] suggesting that it was unclear how long Plaintiff worked as a foreign clerk, and the manual requires that the work must have "lasted long enough for the claimant to learn to do it." (R. 14, PageID# 776). Plaintiff believes it is unclear from the record how long she worked as a foreign clerk. *Id*. This argument is untenable. The VE listened to Plaintiff's own testimony describing her job, and determined based on that description that it was the job of a foreign clerk. (Tr. 66). Further, in this Court's view, Plaintiff could have raised this issue with the VE at the hearing. Though counsel asked several questions of the VE, this specific issue was not raised and is waived.[11]

---

[10] The Program Operations Manual System (POMS) is the operational reference used by Social Security Administration staff to conduct daily business. "While these administrative interpretations [POMS] are not products of formal rulemaking, they nevertheless warrant respect ..." *Washington Dep't of Soc. Servs. v. Keffeler*, 537 U.S. 371, 385, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003). The POMS is available at http://www.ssa.gov/regulations/index.htm.

[11] A recent decision from this district recounts the law on waiver where Plaintiff and counsel fail to raise an issue with the VE:

> Moreover, the Court notes that Plaintiff's counsel did not dispute or otherwise question the VE's separation of the jobs of medical assistant and medical secretary at the hearing. *** Accordingly, Plaintiff has waived her right to object to the VE's classification of her past work as separate jobs. The Sixth Circuit Court of Appeals and many other courts have held that a claimant's failure to object to a VE's testimony during the ALJ's hearing waives his or her right to raise such issues in the district court. *Hammond v. Chater*, No. 96-3755, 116 F.3d 1480 (6th Cir. 1997) (unpublished); *see also Nessle v. Comm'r of Soc. Sec.*, No. 1:14CV442, 2014 U.S. Dist. LEXIS 156647, 2014 WL 5765523, at *7 n.10 (S.D. Ohio Nov. 5, 2014)("To the extent Plaintiff argues that he could not do his past

Plaintiff also takes issue with the ALJ finding that she could perform her past relevant work, which she stated required lifting up to 45 pounds as she performed it, while the VE testified that, according to the DOT, it is a sedentary level of exertion. (R. 14, PageID# 776; Tr. 47, 66). Pursuant to Social Security Ruling (SSR) 82-61:

> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job **but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'**

SSR 82-61, 1982 SSR LEXIS 31 (emphasis added). "It is well accepted that if a claimant cannot perform past relevant work as he actually performed it, but can perform the functional demands and job duties as generally required by employers throughout the economy, the [claimant] should be found 'not disabled.'" *Richardson v. Colvin*, No. 1:16-cv-01583, 2017 U.S. Dist. LEXIS 45624, at *28-29 (N.D. Ohio Mar. 3, 2017) (*quoting De Moss v. Sec'y of Health & Human Servs.*, 848 F.2d 189, 1988 WL 42006 at *5 (6th Cir. 1988)). Plaintiff's counsel cites SSR 00-4p without developing any argument. (R. 14, PageID# 776). That ruling is wholly inapplicable, and applies to "conflicts between occupational evidence provided by VEs … and information in the Dictionary of Occupational Titles (DOT)." 2000 SSR LEXIS 8, *1. Here, Plaintiff identifies no

---

work because it was a 'composite job,' it is too late for Plaintiff to bring up any alleged deficiencies about the vocational expert's testimony because Plaintiff and his attorney were given ample opportunity to question the vocational expert about this subject at the hearing and failed to do so. Plaintiff's counsel cross-examined the vocational expert about other issues, but failed to raise any concern about whether the job the ALJ was describing was a 'composite job.'"

*Dempsey v. Saul*, No. 1:18CV2806, 2020 U.S. Dist. LEXIS 64112, at *13-14 (N.D. Ohio Apr. 13, 2020).

conflict between the DOT and the VE's testimony, as the VE testified that a foreign clerk is sedentary according to the DOT itself. (Tr. 66).

The remainder of Plaintiff's third assignment of error argues that she could not have performed the job of a foreign clerk if her RFC had been more restrictive and included limitations from Drs. Post and Leisinger. (R. 14, PageID# 776-778). The court has already determined above that the ALJ did not err in his consideration of the medical opinions of record. Thus, the ALJ was not required to incorporate rejected limitations into the hypothetical posed to the VE. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (finding that, in fashioning a hypothetical question, the ALJ is required to incorporate only those limitations that she accepts as credible); *accord Williams v. Colvin*, No. 3:13CV1276, 2014 U.S. Dist. LEXIS 49782, at *56 (N.D. Ohio Mar. 19, 2014); *Mueller v. Colvin*, 2013 WL 4427450 at * 9 (N.D. Ohio Aug. 15, 2013).

Plaintiff's third assignment of error is without merit.

### VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*

David A. Ruiz
United States District Judge

Date: March 18, 2022